1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FREDDIE FRANCIS, JR.     ) NO. ED CV 17-283-SJO(E)
                            )
          Plaintiff,     )
                            )
     v.                  ) ORDER DISMISSING FIRST AMENDED
                            )
UNITED STATES OF AMERICA,  ) COMPLAINT WITH LEAVE TO AMEND
et al.,                )
                            )
          Defendants.    )
_____)

     For the reasons discussed below, the First Amended Complaint is dismissed with leave to amend. <u>See</u> 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(2).

**BACKGROUND**

     On February 15, 2017, Plaintiff, a federal prisoner confined at the United States Prison at Coleman, Florida ("USP Coleman"), filed this action pursuant to the Federal Tort Claims Act ("FTCA") and <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). On March 3, 2017, the Court issued an "Order

Dismissing Complaint with Leave to Amend." On May 1, 2017, Plaintiff filed a First Amended Complaint.

Plaintiff's claims arise out his 2013-16 incarceration at the United States Prison at Victorville, California ("USP Victorville") (see Complaint, ECF Dkt. No. 1, pp. 11, 21).[1] Defendants are the United States and five USP VIctorville medical officials: (1) J. Esquetini, MLP (mid-level practitioner); (2) Dr. Snell, M.D.; (3) Dr. Quinn, M.D.; (4) MLP W. Wolverton; and (5) Ms. L. Singh, AHSA (apparently an administrator). Plaintiff sues the individual Defendants in their individual capacities only.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

## I. The Original Complaint

The Complaint was not a model of clarity. Plaintiff appeared to allege that the individual Defendants were deliberately indifferent to an asserted staph infection and vein problem in Plaintiff's left leg and to Plaintiff's alleged coronary artery blockage (see id., p. 13). Plaintiff also appeared to allege that the individual Defendants were negligent in failing to treat Plaintiff properly (see id.).

Plaintiff alleged that, while at USP Victorville, Plaintiff was diagnosed with four blocked arteries (id.). Defendants allegedly were

---

[1]     The form Complaint and its attachments and exhibits did not bear consecutive page numbers. The Court uses the ECF pagination.

told of this diagnosis (id., p. 14).  Plaintiff allegedly suffers from unstable angina, shortness of breath and a low heart rate (id., p. 13).  The individual Defendants allegedly were aware of Plaintiff's heart problems (id.).  The individual Defendants allegedly did not treat Plaintiff for his pain, blocked arteries, chest pains and damaged nerves in his left leg (id.).  The individual Defendants allegedly did not want to send Plaintiff to an outside hospital because of the cost and because of Plaintiff's alleged status as a maximum custody inmate (id.).

Plaintiff alleged that the individual Defendants told Plaintiff that they would not perform EKGs every time Plaintiff experienced chest pain, although Defendants assertedly knew that Plaintiff had once had a heart attack (id.).  In April 2014, Plaintiff allegedly saw Defendant Esquetini who with "the others" assertedly refused to do anything about Plaintiff's chest pain "for months" (id., pp. 20, 21).  Plaintiff also allegedly saw Esquetini concerning a small cut on Plaintiff's leg (id., p. 21).  Esquetini allegedly said he would send Plaintiff something for the cut, but never did so (id.).  Another MLP allegedly took over and discovered that Plaintiff had a staph infection in the leg and prescribed something for it "which Esquetini should have did [sic] a month earlier" (id.).  Esquetini allegedly took eight months to send Plaintiff to outside doctors to determine what was wrong with Plaintiff's leg (id.).  It took "them" 21 months before Plaintiff was sent to an outside hospital regarding his leg problems (id., p. 20).  Defendants' alleged failure to provide medical care for Plaintiff's chest pains and shortness of breath assertedly caused Plaintiff further harm, and Plaintiff allegedly now faces

further injury or death (id., p. 12).

Plaintiff allegedly was transferred to USP Coleman in March of 2016 (id., p. 20). Upon arrival at USP Coleman, pus assertedly was running down Plaintiff's leg, which was swollen (id.). Officials at USP Coleman allegedly determined that the leg was still infected and diagnosed cellulitis (id.). Plaintiff saw an "expert cardiologist" at USP Coleman, Dr. Negron, who purportedly told Plaintiff that: (1) Plaintiff assertedly will experience heart failure due to his heart condition; (2) the doctor assertedly could not place any stents in the right coronary artery and if the doctor performed surgery on the left coronary artery, which allegedly has 80% blockage, Plaintiff assertedly probably would not survive; and (3) even if Plaintiff survived an operation Plaintiff allegedly probably would die in his sleep (id., 9).

Although it was somewhat unclear, Plaintiff also appeared to allege that Defendants failed to treat Plaintiff's claimed problems with his liver, kidney, hip, knee, ankle and shoulder, as well as his alleged Hepatitis-C condition (id., p. 15). Plaintiff also alleged, in conclusory fashion, that Defendants purposefully denied Plaintiff medical care because Plaintiff would not drop "torts & administrative remedies claims against them" (id., p. 6).

Plaintiff sought damages in an uncertain amount. Plaintiff also sought an "emergency injunction" to order the federal Bureau of Prisons immediately to release Plaintiff from custody (id., p. 12). ///

## II.  **The First Amended Complaint**

The First Amended Complaint is similar to the original Complaint, but even more conclusory and even less clear.  Plaintiff alleges that, upon arrival at USP VIctorville, Plaintiff advised unidentified medical staff that prison officials at Plaintiff's previous place of incarceration had said that Plaintiff had suffered a heart attack (First Amended Complaint, p. 3).  At USP Victorville, Plaintiff allegedly reported to "medical" every weekday complaining of chest pains and of pus and other substances coming out of Plaintiff's leg (id.).  Plaintiff also reportedly complained at sick call of alleged problems regarding his hepatitis C and kidneys (id., p. 4).  Unidentified staff allegedly only told Plaintiff to keep his leg elevated (id., p. 3).  This allegedly went on for approximately nine months (id.).  On or about September 1, 2015, Plaintiff allegedly put his leg in a trash bag to catch the pus (id.).  "They" allegedly were interested in "cutting [Plaintiff's] leg off" but Plaintiff assertedly refused an amputation (id., p. 4).

In June of 2016, following Plaintiff's transfer to USP Coleman, Plaintiff allegedly underwent a cardiac catheterization (id.).  A cardiologist allegedly told Plaintiff that Plaintiff's heart was too damaged for surgery, and that the previous institution at which Plaintiff had been incarcerated (i.e., USP Victorville) assertedly should have done more for Plaintiff's heart issues (id.).  At USP Coleman, Plaintiff allegedly was diagnosed as suffering from cellulitis in his left leg (id.).  Defendants' alleged delay in treating Plaintiff's heart condition and left leg assertedly caused

further injury to Plaintiff (id.).

Defendants Esquetini, Walkerton, Snell and Quinn allegedly delayed treatment and displayed deliberate indifference to Plaintiff's conditions (id.). Defendant Singh allegedly knew of Plaintiff's issues and assertedly promised Plaintiff that she would talk to the physicians' assistants and doctors concerning Plaintiff's problems (id., p. 5). Singh allegedly would make comments that Plaintiff was costing the Bureau of Prisons too much money and that she purportedly was going to try to get Plaintiff transferred to another prison to get rid of Plaintiff, due to Plaintiff's "filing on them" concerning Plaintiff's medical issues (id.). Allegedly due to the transfer, many of Plaintiff's medical records "came up missing" (id.).

The First Amended Complaint contains two claims for relief. In the First Claim for Relief, Plaintiff alleges that Defendants Esquitini and Wolverton violated the Eighth Amendment, assertedly by delaying Plaintiff's treatment and failing to treat Plaintiff properly (id., p. 5). Defendant Quinn allegedly "sometimes did get involved" in Plaintiff's medical care and assertedly is responsible "in a supervisory capacity" for the actions of other Defendants (id.). Defendant Snell allegedly sometimes would "peek in" when nurses were changing the dressing on Plaintiff's leg, but allegedly failed to exercise his supervisory authority to stop his subordinates from acting unlawfully (id.). Defendant Singh allegedly failed to supervise her subordinates and failed to provide proper timely treatment for Plaintiff's leg, instead assertedly waiting eight months before sending Plaintiff to an outside hospital (id.).

The Second Claim for Relief attempts to assert a federal tort claim, alleging that Defendants were negligent in treating Plaintiff's heart condition (id., p. 6).  Plaintiff seeks damages and an injunction requiring the Bureau of Prisons to permit Plaintiff to see another cardiologist for a heart transplant (id., p. 7).

## DISCUSSION

As the Court previously advised Plaintiff, prison officials can violate the Constitution if they are "deliberately indifferent" to an inmate's serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To be liable for "deliberate indifference," a jail official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838.  Allegations of negligence do not suffice. Estelle v. Gamble, 429 U.S. at 105-06; Lopez v. Smith, 203 F.3d at 1131.  Thus, inadequate treatment due to accident, mistake, inadvertence, or even gross negligence does not amount to a constitutional violation.  Estelle v. Gamble, 429 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. at 838.

The First Amended Complaint alleges no specific facts showing that Defendants were deliberately indifferent to any known, serious medical need of Plaintiff. Plaintiff's general and conclusory allegations that "Defendants" or unidentified "medical staff" knew of and/or were deliberately indifferent to Plaintiff's alleged medical conditions are insufficient to allege a claim against any specific named Defendant. See McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (complaint is subject to dismissal for failure to state a claim if "one cannot determine from the complaint who is being sued, for what relief, and on what theory"); see also E.D.C. Technologies, Inc. v. Seidel, 2016 WL 4549132, at *9 (N.D. Cal. Sept. 1, 2016) ("Courts consistently conclude that undifferentiated pleading against multiple defendants is improper") (citations, internal brackets and quotations omitted); Chevalier v. Ray and Joan Kroc Corps. Cmty. Ctr., 2012 WL 2088819, at *2 (N.D. Cal. June 8, 2012) (complaint that failed to "identify which wrongs were committed by which Defendant" insufficient). Plaintiff's similarly bare, conclusory allegations that each Defendant assertedly provided inadequate medical care for Plaintiff's heart, leg, hepatitis C and kidney conditions are insufficient. See Toguchi v. Chung, 391 F.3d at 1058 (conclusory allegations of deliberate indifference to serious medical needs insufficient); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (plaintiff must allege more than an "unadorned, the-defendant-unlawfully-harmed-me accusation"; a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

///

///

Additionally, Plaintiff may not sue a supervisor under section 1983 on a theory of <u>respondeat superior</u>. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates on a theory of *respondeat superior*"). A supervisor "is only liable for his or her own misconduct," and is not "accountable for the misdeeds of [his or her] agents." <u>Id.</u> at 677. Mere knowledge of a subordinate's alleged misconduct is insufficient. <u>Id.</u> A supervisor may be held liable in his or her individual capacity "for [his or her] own culpable action or inaction in the training, supervision or control of [his or her] subordinates." <u>Watkins v. City of Oakland, Cal.</u>, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)). To state a claim against any individual defendant, a plaintiff must allege <u>facts</u> showing that the individual defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it. <u>See</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."). Plaintiff's conclusory allegations do not suffice. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678, 686 (plaintiff must allege more than an "unadorned, the-defendant-unlawfully-harmed me accusation"; a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do") (citations and quotations omitted).

///

///

///

**ORDER**

For the foregoing reasons, the First Amended Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a Second Amended Complaint.  Any Second Amended Complaint must be complete in itself and not refer in any manner to any prior complaint.  Failure to file timely a Second Amended Complaint may result in the dismissal of this action.  See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234 F.3d 428 (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 552 U.S. 985 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff

///
///
///
///
///
///
///
///
///
///

notice of the substantive problems with his claims); <u>Plumeau v. School District #40, County of Yamhill</u>, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).


IT IS SO ORDERED.


DATED: May 22, 2017.

_S. James Otero_

_____
S. JAMES OTERO
UNITED STATES DISTRICT JUDGE


PRESENTED this 16th day

of May, 2017 by:


_____/s/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE